IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG


THE OHIO VALLEY COAL COMPANY,

    Plaintiff/Counterclaim Defendant,


v.                          Civil Action No. 1:17-cv-213
                                   (Judge Kleeh)

UNITED MINE WORKERS OF AMERICA,
INTERNATIONAL UNION, and
UNITED MINE WORKERS OF AMERICA,

    Defendants/Counterclaim Plaintiffs.


**MEMORANDUM OPINION AND ORDER GRANTING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 17],
DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[ECF NO. 18] AND VACATING ARBITRATION AWARD**

Pending before the Court are the cross motions for summary judgment filed by Plaintiff and Counter-Defendant The Ohio Valley Coal Company [ECF No. 17] and Defendants and Counter-Claimants the United Mine Workers of America, International Union, and United Mine Workers of America, District 31 [ECF No. 18]. The parties have fully briefed the issues presented and the matter is ripe for decision. For the reasons articulated herein, the Court **GRANTS** Plaintiff's motion, **DENIES** Defendants' motion and **VACATES** the arbitration award.

## I.    PROCEDURAL HISTORY

On December 13, 2017, Plaintiff The Ohio Valley Coal Company ("Ohio Valley") instituted this action initially challenging an

**MEMORANDUM OPINION AND ORDER GRANTING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 17],
DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[ECF NO. 18] AND VACATING ARBITRATION AWARD**

---

arbitration award finding the underlying grievance to be arbitrable [ECF No. 1]. Defendants United Mine Workers of America, International Union and United Mine Workers of America, District 31 (collectively hereinafter "UMWA"), filed their Answer and Counterclaim on February 5, 2018 [ECF No. 7]. Judge Keeley entered a scheduling order governing designation of a joint stipulated record and briefing on February 13, 2018 [ECF No. 9]. Ohio Valley answered the Counterclaim on February 23, 2018 [ECF No. 11]. Following the Arbitrator's decision on the merits, Ohio Valley filed its Amended Complaint to Vacate Arbitration Award on February 26, 2018 [ECF No. 12]. Defendants filed their Answer and Amended Counterclaim on March 7, 2018 [ECF No. 13]. Ohio Valley answered the Amended Counterclaim on March 28, 2018 [ECF No. 14].

The parties submitted their Joint Stipulation of Record on June 15, 2018 [ECF No. 15]. Thereafter, the parties timely filed cross motions for summary judgment with timely responses in opposition [ECF Nos. 17, 18, 20 and 21]. This matter was transferred to United States District Judge Thomas S. Kleeh on December 1, 2018 [ECF No. 22].

## II.  FACTUAL BACKGROUND

While the procedural history and underlying proceedings appeared to take a twisted path, the factual background of this

2

**MEMORANDUM OPINION AND ORDER GRANTING**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 17],**
**DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
**[ECF NO. 18] AND VACATING ARBITRATION AWARD**

matter is straightforward.[1]  Ohio Valley formerly operated the Powhatan No. 6 Mine ("Mine") in Belmont County, Ohio.[2]  Defendant United Mine Workers of America, District 31 represented all bargaining unit employees of the Mine since it was constructed and commenced operation in 1972.  The 2016 National Bituminous Coal Wage Agreement ("NBCWA") governs the terms and conditions of employment for all bargaining unit employees at the Mine.

The NBCWA provides the following regarding "Work Jurisdiction":

> The production of coal, including removal of over-burden and coal waste, preparation, processing and cleaning of coal and transportation of coal (except by waterway or rail not owned by Employer), repair and maintenance work normally performed at the mine site or at a central shop of the Employer and maintenance of gob piles and mine roads, and work of the type customarily related to all of the above shall be performed by classified Employees of the Employer covered by and in accordance with the terms of this Agreement.  Contracting,  subcontracting,

---

[1] The parties do not raise the specter of a genuine issue of material fact which could prevent this Court from disposing of this matter on the cross motions for summary judgment.  Defendants affirmatively disclaim any issues of fact – "The pleadings filed herein reveal that no dispute exists between the parties as to any material fact." [ECF No. 19 at 1].

[2] Plaintiff's Summary Judgment Motion details the chain of ownership for this mine culminating in Ohio Valley's operation.  Those transactions are not relevant to the questions presented in the cross motions and, therefore, will not be repeated here.

**Ohio Valley Coal v. UMWA et al.**          **Civil Action No. 1:17-cv-213**

MEMORANDUM OPINION AND ORDER GRANTING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 17],
DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[ECF NO. 18] AND VACATING ARBITRATION AWARD

> leasing and subleasing, and construction work,
> as defined herein, will be conducted in
> accordance with the provisions of this
> Article.
>
> Nothing in this section will be construed to
> diminish the jurisdiction, express or implied,
> of the United Mine Workers.

[ECF No. 15-1 at Art. IA §(a)].

The NBCWA also provides:

> All decisions of the Arbitration Review Board
> rendered prior to the expiration of the
> National Bituminous Coal Wage Agreement of
> 1978 shall continue to have precedential
> effect under this Agreement to the extent that
> the basis for such decisions have not been
> modified by subsequent changes in this
> agreement.

[ECF No. 15-1 at Art. XXIII §(k)].

Ohio Valley and UMWA entered into a separate Memorandum of Understanding ("MOU") when the NBCWA was signed. [ECF No. 15-3]. That MOU modified the terms and conditions of the parties' relationship and Ohio Valley's obligations under the NBCWA. That MOU establishes what constitutes the Mine as well as "coal lands" for purposes of properties, lands, reserves, operations and facilities to which the NBCWA applies.

The Mine was in operation through exhaustion of its coal reserves with production permanently ceasing on October 16, 2016. Ohio Valley finished processing mined coal from the Mine on December 15, 2016, and it was permanently sealed on December 31,

MEMORANDUM OPINION AND ORDER GRANTING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 17],
DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[ECF NO. 18] AND VACATING ARBITRATION AWARD

2016.  The Mine, which once employed nearly 500, was staffed by only 16 classified employees when the underlying grievance was filed.  [ECF No. 12-1 at 5].

In 2001, an unrelated subsidiary of Murray Energy Corporation, American Energy Corporation, opened the Century Mine to mine a coal reserve contiguous with the Mine.  Ohio Valley has no ownership interest in the Century Mine and the UMWA does not represent any employees at the Century Mine.

On July 15, 2002, Ohio Valley and American Energy Corporation entered into a Slurry Disposal Agreement.  Ohio Valley licensed rights to dispose of coal slurry materials to American Energy Corporation in the impoundment on property formerly associated with the Mine. [ECF No. 15-4 at Art. III, V].  Pursuant to the terms of the agreement, American Energy Corporation retains sole responsibility for the transportation of its slurry materials to the impoundment.  [Id. at Art. IV].  Ohio Valley did grant an easement and right-of-way entry onto its property for installation and maintenance of the necessary pipeline.  [Id.].  American Energy continued to dispose of its slurry materials in the impoundment as of briefing in this matter.

MEMORANDUM OPINION AND ORDER GRANTING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 17],
DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[ECF NO. 18] AND VACATING ARBITRATION AWARD

---

## A. <u>The Dispute</u>

The UMWA disputes the use of non-bargaining unit labor for repair and maintenance of the heavy equipment being used to maintain and increase the size of the water impoundment located on Ohio Valley's property formerly associated with the Mine. Grievance No. 17-31-04 challenged Ohio Valley contracting out mechanical work required on a D6 Caterpillar Bulldozer. Specifically, the grievance stated

> On 03-09-17 Company violated ART. 1a sec g-2 XXVI sec. b and other pertinent provisions of the contract. Company has dozer taken out for repair 6 m[.] This is our work we have always done [.] Asking to be made whole in all matters an cease in Dist from this action or practice. [sic]

[ECF No. 15-2].

## A. <u>Arbitration Proceedings and Awards</u>

Arbitrator Mollie H. Bowers convened a hearing on Grievance No. 17-31-04 on September 20, 2017. Ohio Valley initially raised an issue with respect to arbitrability given the NBCWA's Work Jurisdiction provisions. The arbitrator bifurcated the hearing to determine if the grievance was arbitrable before receiving evidence on the merits; however, she only heard argument on

**MEMORANDUM OPINION AND ORDER GRANTING**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 17],**
**DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
**[ECF NO. 18] AND VACATING ARBITRATION AWARD**

arbitrability and received no evidence.[3]  Arbitrator Bowers issued her first Award in the underlying proceedings on October 21, 2017. She dismissed Plaintiff's concerns and found the matter to be arbitrable.

Thereafter, Arbitrator Bowers convened a hearing on the merits of Grievance No. 17-31-04 on January 24, 2018.[4]  The parties presented evidence on both the issue of arbitrability and the merits of the UMWA's grievance.  Arbitrator Bowers again sustained the grievance as arbitrable[5] and found for the UMWA on the merits as well.  She awarded the grievants 48 hours of work at time and one half for overtime finding Ohio Valley's contracting out the work to be "arbitrary and capricious."

### III. <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to

---

[3] Plaintiff contends it submitted a number of court decisions and panel arbitration decisions to Arbitrator Bowers along with a "binder" of hearing exhibits for her review.  [ECF No. 17-1 at 6].
[4] Plaintiff avers it advised the arbitrator that this civil action had already been initiated when this second arbitration hearing was convened. [ECF No. 17-1 at 7].

[5] Proving herself clairvoyant, Arbitrator Bowers opined in her second Arbitration Award that Ohio Valley's "appeal to vacate of the [sic] Arbitrator's award of October 21, 2017, was likely to be granted by the court."  [ECF No. 12-2 at 4].

judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The nonmoving party must "make a sufficient showing on an essential element of its case with respect to which it has the burden of proof." Id. at 317–18. Summary judgment is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## IV. GOVERNING LAW

This Court may review labor arbitrators' decisions under Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, but this power of review is "extremely limited." Cannelton Indus., Inc. v. Dist. 17, UMWA, 951 F.2d 591, 593 (4th Cir. 1991). This is because "[t]he parties to a collective bargaining agreement bargained for the arbitrator's interpretation, and 'so far as the arbitrator's decision concerns

**MEMORANDUM OPINION AND ORDER GRANTING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 17],
DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[ECF NO. 18] AND VACATING ARBITRATION AWARD**

construction of the contract, the courts have no business overruling him because their interpretation . . . is different from his.'" Island Creek Coal Co. v. Dist. 28, UMWA, 29 F.3d 126, 129 (4th Cir. 1994) (citing United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 599 (1960)). The Supreme Court of the United States, in the "Steelworkers Trilogy,"[6] has "emphasized that federal courts should refuse to review the merits of an arbitration award under a collective bargaining agreement." Mutual Mining, Inc. v. Dist. 17, UMWA, 47 F.3d 1165, at *2 (4th Cir. 1995) (unpublished). Both an arbitrator's findings of fact and interpretation of the law are accorded great deference. Upshur Coals Corp. v. UMWA, Dist. 31, 933 F.2d 225, 229 (4th Cir. 1991). In addition, "[t]he selection of remedies is almost exclusively within the arbitrator's domain." Cannelton, 951 F.2d at 593–54 (citing United Paperworkers Int'l Union v. Misco, 484 U.S. 29 (1987)).

Still, there are some limitations on arbitration awards. The award "must draw its essence from the contract and cannot simply

---

[6] The Steelworkers Trilogy includes the following cases: United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593 (1960); United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574 (1960); and United Steelworkers of America v. American Mfg. Co., 363 U.S. 564 (1960).

**MEMORANDUM OPINION AND ORDER GRANTING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 17],
DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[ECF NO. 18] AND VACATING ARBITRATION AWARD**

reflect the arbitrator's own notions of industrial justice." Misco, 484 U.S. at 38. In addition, an arbitrator may not "impose a punitive award or punitive damages" unless a provision in the collective bargaining agreement provides for them. Island Creek, 29 F.3d at 129 (citing Cannelton, 951 F.2d at 594). Notably, under Fourth Circuit precedent, compensation for a loss of union work can be permissible. See Cannelton, 951 F.2d at 594 (writing that if the arbitrator "ordered monetary damages to compensate employees for work they were entitled to perform under the NBCWA, the award might reasonably be construed as compensatory damages for a cognizable loss of union work"). In deciding whether an award is punitive or whether it draws its essence from the agreement, courts should be mindful that arbitrators "need not give their reasons for an award," but courts may rely on arbitrators' reasoning to determine whether the arbitrator has applied "his own brand of industrial justice . . . ." Cannelton, 951 F.2d at 594.

In reviewing arbitration awards, courts "must be concerned not to broaden the scope of judicial review of arbitration decisions nor to lengthen a process that is intended to resolve labor disputes quickly." Id. at 595; see also Upshur Coals Corp., 933 F.2d at 231 (writing that "[l]abor arbitration serves the

important goal of providing swift resolution to contractual disputes"). "As long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the court cannot overturn his decision simply because it disagrees with his factual findings, contract interpretations, or choice of remedies." Misco, 484 U.S. at 30.

As the Fourth Circuit has written, "[a]bove all, we must determine only whether the arbitrator did his job — not whether he did it well, correctly, or reasonably, but simply whether he did it." Mountaineer Gas Co. v. Oil, Chem. & Atomic Workers Int'l Union, 76 F.3d 606, 608 (4th Cir. 1996). In this determination, the Court considers "(1) the arbitrator's role as defined by the CBA; (2) whether the award ignored the plain language of the CBA; and (3) whether the arbitrator's discretion in formulating the award comported with the essence of the CBA's proscribed limits." Id. Furthermore, "the arbitrator must take into account any existing common law of the particular plant or industry, for it is an integral part of the contract." Norfolk Shipbuilding & Drydock Corp. v. Local No. 684, 671 F.2d 797, 799–800 (4th Cir. 1982); see also Mountaineer Gas Co. v. Oil, Chem. & Atomic Workers Int'l Union, 76 F.3d 606, 610 (4th Cir. 1996) (vacating arbitration award when arbitrator "blatantly ignored the unambiguous language" of an

MEMORANDUM OPINION AND ORDER GRANTING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 17],
DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[ECF NO. 18] AND VACATING ARBITRATION AWARD

applicable policy). The common law, as described above, does not allow the arbitrator to impose punitive damages unless they are provided for in the agreement. See Cannelton, 951 F.2d at 594.

## V.   DISCUSSION

The true issue raised in the pending cross motions is one of arbitrability. Ohio Valley conceded before Arbitrator Bowers that it violated the terms of the NBCWA if – but only if – the grievance was arbitrable. The undisputed facts, the unambiguous language of the NBCWA as well as the weight of relevant arbitral and judicial decisions compel the conclusion that the grievance is not arbitrable as the UMWA did not have work jurisdiction making both arbitration awards an expression of the arbitrator's own sense of industrial justice as opposed to drawing their essence from the contract. This Court is mindful of its limited role in proceedings such as this and the great deference to which arbitrators are entitled; however, arbitration awards cannot stand when the arbitrator substitutes her own judgment over the plain language and essence of the contract. See Misco, 484 U.S. at 38.

Again, Article IA of the NBCWA limits the work jurisdiction of the covered bargaining unit to activities related to "[t]he production of coal ..." [ECF No. 15-1 at §(a)]. There is no dispute that the Mine had long ceased operations and producing

**MEMORANDUM OPINION AND ORDER GRANTING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 17],
DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[ECF NO. 18] AND VACATING ARBITRATION AWARD**

coal at the time of the work made subject of the grievance below. In fact, the UMWA offered to stipulate to this undisputed fact – "You know, [the Union will] stipulate that the Mine no longer produced coal." [ECF No. 15-12 at 10:7-10:8]. The arbitrator herself made repeated reference to the fact the mine had not been in operation producing coal in both her Arbitration Awards:

- "Effective on October 16, 2016, all coal production at the mine ceased permanently and the mine was sealed. There was no disagreement that assets of the mine were sold." [ECF No. 12-1 at 5];

- "That is because, on October 16, 2016, all coal production at the Powhatan No. 6 mine ceased permanently, the mine was sealed, and the asserts [sic] were sold. None of these facts are disputed." [ECF No. 12-1 at 6];

- "The mine is permanently closed and the assets have been sold;" [ECF No. 12-1 at 10];

- "There is no dispute that the Powhatan No. 6 mine was permanently closed, in October of 2016, and that reclamation work had not begun at the time the grievance was filed, nor had it begun at the time of this hearing." [ECF No. 12-2 at 10];

**MEMORANDUM OPINION AND ORDER GRANTING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 17],
DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[ECF NO. 18] AND VACATING ARBITRATION AWARD**

- "The Powhatan No. 6 mine was permanently closed and all coal production ceased there on October 16, 2016." [ECF No. 12-2 at 11].

Yet, evading this settled fact and avoiding the clear language of the contract and the guiding precedential decisions to the contrary, the Arbitrator twice found the grievance arbitrable.

In so doing, she initially wrote "nothing in the language contained in Article IA(a) restricts or eliminates coverage of classified employees who are performing work associated with the 'production of coal' by *another Company owned mine* (union or otherwise) when it is done on the property of a closed mine." [ECF No. 12-1 at 11] (emphasis added). After Plaintiff endeavored to submit additional evidence at the January 24, 2018, hearing, the arbitrator then turned to NCBWA's Article IA(f)[7] for support. However, the Arbitration Awards' findings and conclusion find no basis in the factual record before the arbitrator, the plain language of the NBCWA or the precedent provided during the proceedings below.

---

[7] That provision provides that the NBCWA "covers the operation of all the coal lands, coal producing and coal preparation facilities owned or held under lease by them ... or acquired during its term which may hereafter (during the term of this Agreement) be put into production or use." [ECF No. 12-1 at IA(f)].

**MEMORANDUM OPINION AND ORDER GRANTING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 17],
DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[ECF NO. 18] AND VACATING ARBITRATION AWARD**

Again, there is no dispute that the Mine was permanently closed and sealed as of October 2016. Likewise, there appears to be no dispute in the record that the production of coal generating the slurry being deposited in Ohio Valley's impoundment occurred at the Century Mine. This Court does not find a dispute in the record about the ownership of the Century Mine compared to Powhatan No. 6 but senses a great deal of potential confusion.[8]

Despite failing to point to any evidence in the record to support the conclusion, the arbitrator repeatedly makes sweeping statements treating the separately owned mines (Powhatan No. 6 and Century) as being owned and operated by the same entity. For example, she states, without evidentiary support or reference to any aspect of the record, "[t]he Company owns a nearby sister, non-union mine." [ECF No. 12-1 at 5].[9] Similar sweeping statements are found throughout the arbitration awards: "a Company-owned,

---

[8] The Court notes and finds quite revealing the silence from the UMWA on this matter in its briefing. At no point did the UMWA advance the theory (or defend the arbitrator's findings) that Powhatan No. 6 and the Century Mine are owned or operated by the same company or share any similarities other than being geographically contiguous making deposit of coal slurry from the Century Mine to the Powhatan No. 6 impoundment feasible by pipeline.

[9] The October 21, 2017, Arbitration Award makes clear "the Company" is Ohio Valley Coal Company and specifically its Powhatan No. 6 mining operation. [ECF No. 12-1 at 1].

**MEMORANDUM OPINION AND ORDER GRANTING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 17],
DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[ECF NO. 18] AND VACATING ARBITRATION AWARD**

non-union sister mine [ECF No. 12-1 at 7]; "[t]he case involves one company that is signatory to the NBCWA for the purposes of the Powhatan No. 6 mine and is also the owner of an adjacent, non-union mine" [ECF No. 12-1 at 10]; "...coal waste from production at the adjacent mine that it owns" [ECF No. 12-1 at 10]; "[f]acts are that the Company has not divested itself of the coal lands associated with the Powhatan No. 6 mine and that it is conducting 'operations' on that land associated with coal production at a property owned by it," [ECF No. 12-1 at 11]; and, "...operating on that land to support coal production at an adjacent mine which the Company owns." [ECF no. 12-1 at 13].

The arbitrator continued down this unsupported path in an effort to distinguish the present matter from decisions provided to her during the first arbitration hearing. In an effort to distance the arbitration award from the helpful and persuasive analysis in BethEnergy Mines, Inc. v. Dist. 30, UMWA, Local Union 5741, 714 F. Supp. 260 (E.D. Ky. 1988), she stated "[t]he Company here owns both properties in question and is 'operating' the coal lands and is utilizing classified employees at Powhatan No. 6 to support 'the production of coal' and its 'operations' at an adjacent mine." [ECF No. 12-1 at 14]. Frankly, that statement is clearly erroneous based on the record before both the arbitrator

and this Court (which also fails to distinguish the <u>BethEnergy</u> <u>Mines</u> decision).[10]

Moreover, the arbitrator repeated the same false premise to support her finding.

> The Company here has continued to actively use (operate) coal land and classified employees associated with Powhatan No. 6 mine to support coal production at its adjacent mine. ***Granted, this work does not support coal production at the subject mine***, but it does support and is essential to coal production at and the operation of the adjacent mine which is also owned by the Company.

[ECF No. 12-1 at 15] (emphasis added). The arbitrator's own words run afoul of the clear, unambiguous language of the NBCWA and the efforts to support her own sense of industrial justice based on clearly erroneous statements of fact are unavailing. Considering one of the factors this Court must consider when assessing if the arbitrator "did her job" is whether she ignored the plain language of the applicable contract, this Court cannot conclude the

---

[10] In their briefing, Defendants likewise attempt to distinguish the numerous arbitration decisions and cases cited and produced by Plaintiffs in support of their position. Defendants are quite correct to note that most, if not all, of those decisions and cases address the meaning and impact of the key NBCWA provisions in this case in the context of successorship litigation. UMWA likewise correctly notes that no successorship issues exist in this matter. However, this Court still finds that arbitration and judicial authority quite persuasive particularly considering the lack of authority to the contrary provided by any of the parties or cited by the arbitrator.

arbitrator "did her job."    See Mountaineer Gas Co., 76 F.3d at 608.

Ohio Valley provided the arbitrator and this Court with numerous decisions and cases addressing the impact a mine being closed or sealed has on whether that mine is an "operation" or, arguably, engaged in the "production of coal" as set forth in the NBCWA. Although the arbitration awards indicate those decisions and cases were considered, those precedential offerings were apparently cast aside or, as noted infra at p.17, "distinguished" based on false assumptions about the ownership of the mines subject to the Slurry Disposal Agreement. [ECF No. 15-4]. This Court may not substitute its legal analysis for that of the arbitrator; however, this Court must insist that the plain language of the contract and the existing common law of the industry be adhered to and followed. See Norfolk Shipbuilding & Drydock Corp., 671 F.2d at 799-800 (requiring the arbitrator to "take into account any existing common law of the particular plant or industry, for it is an integral part of the contract.").

Those decisions and cases, which were provided to both the arbitrator during the underlying proceedings and this Court as

MEMORANDUM OPINION AND ORDER GRANTING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 17],
DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[ECF NO. 18] AND VACATING ARBITRATION AWARD

---

Exhibit 1 of Plaintiff's summary judgment motion [ECF No. 17-2],[11] all maintain a consistent point – that, absent a specific exception to the contrary, a coal mine must be actively operating to trigger the work jurisdiction of the NBCWA. See, e.g., Eastern Ass'n Coal Co. v. UMWA Local Union 9177, Dist. 17, Case No 84-17-86-299 (Arb. Vierthaler, 1986)("The term 'coal mining operations' carries with it the plain meaning that coal is being mined or processed."); UMWA, Int'l Union v. U.S. Steel Mining Co., 636 F. Supp. 151, 153-54 (D. Utah 1986)("[A]s a matter of law, a mining 'operation,' for purposes of Article I of the 1984 NBCWA, refers to a mine site or facility where active coal mining operations are being conducted. That is, an 'operation' connotes a mine that is actively producing coal and operating as a coal mine."); UMWA, Dist. 31 v. Thomas Dev., Ltd., 821 F. Supp. 426, 428 (S.D.W. Va. 1993)("The term 'operation' connotes a mine that is actively producing coal and operating as a coal mine ...").

In short, the plain language of the NBCWA as well as the arbitration and judicial precedent require the production of coal, as defined in the contract, for the bargaining unit to have

---

[11] This Court has reviewed and considered this voluminous collection of authority and could find no other relevant guidance elsewhere. As noted *infra*, Defendants cited nothing to the contrary or any authority suggesting a different reasoning.

jurisdiction over the work being performed. Despite wholly inaccurate assumptions to the contrary, Ohio Valley was not engaged at any relevant time in the production of coal at the Mine as it was closed and sealed nor was Ohio Valley involved in the production of coal at **another company's operation**, American Energy's Century Mine. Instead, under the terms of the Slurry Disposal Agreement, Ohio Valley licensed use of its impoundment to a **separate legal entity** where the UMWA has no work jurisdiction.

The Court does not merely "disagree" with the arbitrator's "factual findings or contractual interpretations." <u>Misco</u>, 484 U.S. at 30. In both arbitration awards, the arbitrator relied on inaccurate factual premises to reach a conclusion and failed to adhere to the unambiguous and plain language of the agreement; therefore, she failed to do her job.[12] <u>Mountaineer Gas Co.</u>, 76

---

[12] It is axiomatic that arbitrators may not venture outside the four-corners of the contract and substitute their own personal sense of fairness or justice. Although the Court makes no findings or conclusions with respect to any motivations, the arbitration awards do contain references indicating the arbitrator based her decisions on her own personal notions of fairness and equity as opposed to the applicable contract language, instructive arbitration and judicial authority and the record before her. For example, the arbitrator makes reference to "crumbs of overtime," "menial tasks" and "arbitrary and capricious" decisions which are clearly vested to management discretion under the contract. [ECF No. 12-2 at 17]. The arbitrator also takes a mostly-unnamed supervisor, "Supervisor V," to task because he was not presented

**MEMORANDUM OPINION AND ORDER GRANTING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 17],
DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[ECF NO. 18] AND VACATING ARBITRATION AWARD**

---

F.3d at 608; <u>see also</u> <u>United States Postal Service v. American</u>

<u>Postal Workers Union</u>, 204 F.3d 523, 527 (4th Cir. 2000)(citation

omitted) ("When the arbitrator ignores the unambiguous language

chosen by the parties, the arbitrator simply fails to do [her]

job."). As the Supreme Court of the United States noted long ago,

an arbitration award "is legitimate only so long as it draws its

essence from the collective bargaining agreement. When the

arbitrator's words manifest an infidelity to this obligation,

courts have not choice but to refuse enforcement of the award."

<u>Enterprise Wheel & Car Corp.</u>, 363 U.S. at 597. Here, the Court

has no choice but to vacate the arbitration awards.

## VI.  <u>CONCLUSION</u>

For the reasons discussed above, Plaintiff's Motion for

Summary Judgment is **GRANTED** [ECF No. 17], and Defendants' Motion

---

as a witness. [ECF No. 12-2 at 13]. The arbitrator's failure to
follow the plain language of the NBCWA and the factually inaccurate
efforts to justify that departure coupled with these remarks
confirm for this Court the arbitrator substituted her own sense of
industrial justice in place of that for which the parties
bargained.

Plaintiff suggests in its briefing that the alleged punitive nature
of the remedy awarded the grievants is also indicia of the
arbitrator "failing to do her job." The Court has not undertaken
an analysis of the remedy given the conclusion the matter was not
arbitrable in the first instance and, therefore, makes no findings
with respect to the propriety of the stated remedy.

**MEMORANDUM OPINION AND ORDER GRANTING**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 17],**
**DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
**[ECF NO. 18] AND VACATING ARBITRATION AWARD**

for Summary Judgment is **DENIED** [ECF No. 18].  The arbitration awards are hereby **VACATED**.  It is further **ORDERED** that this action be and hereby is **DISMISSED WITH PREJUDICE** and **STRICKEN** from the active docket of the Court.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this memorandum opinion and order to counsel of record.

**DATED**: September 27, 2019

Thomas S. Kleeh
UNITED STATES DISTRICT JUDGE